UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALFRED CAVUOTI and KIMBERLY ARDITO, individually and on behalf of NICHOLAS ARDITO,<br><br>    Plaintiffs,<br><br>v.<br><br>MARY LAKOTA,<br><br>    Defendant. | No. 3:13 - CV - 829 (CSH)<br><br>JUNE 14, 2013 |

### RULING ON PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

**HAIGHT, Senior District Judge**:

  This is an action alleging violation of the federal Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601, *et seq.* ("FHA"), and, by supplemental jurisdiction, violation of Conn. Gen. Stat. § 46a-64c.

  Plaintiffs Alfred Cavuoti, Kimberly Ardito and Nicholas Ardito are currently rent-paying tenants residing in a second-floor apartment in a building located at 100 Church Street, Wallingford, Connecticut. The building is owned by Defendant Mary Lakota. Cavuoti, Kimberly Ardito and Nicholas Ardito are identified as the Tenants in a one-year lease covering the apartment. Lakota is the Landlord. By its terms, the lease expires on June 15, 2013. Lakota sent Plaintiffs a letter dated March 22, 2013, stating that she would not be renewing their lease.

  Plaintiffs' theory of the case is that Defendant is terminating the lease because Nicholas

Ardito, son of Kimberly Ardito, is a disabled individual. If that theory is proven, Defendant would be in violation of the FHA, entitling Plaintiffs to injunctive relief. Defendant's theory of the case is that she is terminating the lease because Plaintiffs created unreasonable levels of noise in the apartment, causing the first-floor tenant to complain.

Plaintiffs did not commence this action until June 11, 2013, when they filed a complaint seeking a temporary restraining order ("TRO") and a preliminary injunction. Given the exigencies of time, the Court scheduled a hearing for 11:00 a.m. on June 14. Defendant Lakota could not arrange for the attendance of counsel on that short notice, and accordingly appeared *pro se*. Plaintiffs were represented by counsel. Plaintiff Cavuoti says in an affidavit that Lakota identified Nicholas Ardito's disabilities as the reason for the lease termination during telephone conversations "in April and May." Doc. #2-2 (Cavuoti Affidavit), ¶ 5. Plaintiffs did not act with due diligence in waiting until June 11, four days before the lease terminated, before commencing this action. However, this is not laches rising to the level of foreclosing injunctive relief if Plaintiffs' FHA claim is well founded. It appears from the record that during part of this period Plaintiffs were searching for another apartment, apparently without success to date, but if that search had succeeded no lawsuit would have been necessary.

Plaintiffs seek a TRO which, if granted, would for the duration of the Order keep them in the apartment, paying the prior monthly sums. The propriety of issuing a TRO is determined by the same standards governing a preliminary injunction, and are applicable to actions alleging a violation of the FHA. *See, e.g., LaFlamme v. New Horizons, Inc.*, 514 F.Supp.2d 250, 254 (D.Conn. 2007). In the circumstances of this case, the injunctive relief Plaintiffs seek is prohibitory, rather than mandatory, and to obtain that relief Plaintiffs must demonstrate "(1) that [they] will be irreparably

harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and a balance of hardships tipping decidedly in [their] favor." *Forest City Daly Housing, Inc. v. Town of No. Hempstead*, 175 F.3d 144, 149 (2d Cir. 1999) (action alleging violation of FHA).

Plaintiffs at bar satisfy the irreparable injury element because "[w]here a plaintiff demonstrates a likelihood of success on the merits of a FHA claim, irreparable harm may be presumed." *Parris v. Pappas*, No. 3:10-cv-1128, 2010 WL 5157326 (D.Conn. Dec. 14, 2010), at *1 (citation omitted). Plaintiffs establish a likelihood of success on the merits because their submissions contain direct evidence of Defendant's refusing to renew the lease because Nicholas Ardito is disabled. Cavuoti states in ¶ 6 of his affidavit that Lakota told him "the reason she is not renewing our lease and plans to file an eviction is that Nicholas should not be living on the second floor or using stairs because of his disabilities." Doc. #2-2 (Cavuoti Affidavit), at ¶ 6. Plaintiffs also submit an affidavit from a non-party, Suzanne M. Ciaburri, who inspected the apartment in May after Lakota advertised it for rent, asked Lakota why the current tenants were moving out, and received this response:

> Mary told me that she was not renewing their lease because they have a disabled son. She said that a disabled child should not be living in a second floor apartment and instead belongs on the first floor. She also said that the disabled child should not be using stairs.

Doc. #2-4 (Ciaburri Affidavit), at ¶ 7. Accepting *arguendo* that Lakota's decision not to renew the lease was prompted solely by praiseworthy solicitude for Nicholas's disabilities, that would not preserve the decision from violating the FHA, which "prohibits a landlord from discriminating against a handicapped tenant on account of his or her disability." *LaFlamme*, 514 F.Supp.2d at 255.

The statute's prohibition is absolute: a landlord's good intentions cannot constitute a defense. *See LaFlamme v. New Horizons, Inc.*, 605 F.Supp.2d 378, 394 (D.Conn. 2009) (Arterton, *J.*) ("A discriminatory housing practice is still unlawful even if made with good intentions if it denies housing to individuals with disabilities based on their disabilities.").

As for Lakota's statement at the hearing that Plaintiffs' lease is not being renewed because of the excessive noise they made, that reason would not violate the FHA, but Lakota's contemporaneous remarks would seem to establish that Nicholas's disability was at least a partial motivating factor in the termination, and that is sufficient to show prohibited discriminatory treatment under the FHA. *Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032, 1042 (2d Cir. 1979).

If one looks to the alternative basis for granting a TRO, it is clear that at the very least Plaintiffs show serious questions deserving of further litigation, and the balance of hardships tips decidedly in their favor. The eviction of the Plaintiff family with a disabled son from their home causes irreparable injury almost by definition; and there is no discernible hardship to the Defendant resulting from a TRO, since Plaintiffs say they are willing, able and intend to keep on paying the monthly amounts specified in the lease.

For these reasons, the Court grants Plaintiffs' motion for a TRO (Doc. #2), and enters an Order as follows:

IT IS HEREBY ORDERED that Defendant Mary Lakota, her agents, servants, employees and attorneys, and other persons who are in active concert or participation with her, are hereby TEMPORARILY RESTRAINED:

1. From terminating the lease covering the premises at 100 Church Street, Apartment 2, Wallingford, Connecticut, wherein Defendant Lakota is the Landlord and Plaintiffs Alfred Cavuoti,

Kimberly Ardito and Nicholas Ardito are the Tenants; and

    2. From evicting, or taking any steps to commence the eviction, of the Plaintiffs from the leased premises referred to in Paragraph 1 of this Order.

    This Temporary Restraining Order shall remain in full force and effect to and including **June 28, 2013**, following which date the Order expires, unless extended by further Court Order or by consent of the parties.

Dated: New Haven, Connecticut
       June 14, 2013

                           */s/Charles S. Haight, Jr.*
                           CHARLES S. HAIGHT, JR.
                           Senior United States District Judge